GUILBERT PELOQUIN *vs.* LIONEL PELOQUIN *et al.*

JANUARY 7, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a bill in equity to set aside a deed to certain real estate in the city of Central Falls and for an accounting. After hearing on bill, answer and proof, a final decree was entered in the superior court denying and dismissing the bill, whereupon the complainant duly appealed to this court.

The respondents are Lionel Peloquin and his wife Eveline, one of complainant's daughters. In 1944 the complainant, then about seventy-six years old, and his wife Delia, who deceased after the bill of complaint had been filed, lived alone in the first floor tenement of a three-family house owned by them as joint tenants. Following several conferences between the parties in interest, attended also by an attorney who apparently had the confidence of all, an agreement dated July 26, 1944 was executed in the presence of witnesses after it had been translated and explained to complainant.

Pursuant to such agreement the complainant and his wife, in consideration of respondents' promise to care for and support them for the remainder of their lives, conveyed to them as joint tenants the property in question by deed of even date with the agreement. Shortly thereafter the respondents moved into the house and the parties seemed to get along fairly well living together for approximately a year and a half. Subsequently, on July 9, 1947, the complainant and his wife moved from the house in question because of certain alleged grievances, and on the same day instituted this suit against the respondents. Most of the incidents upon which complainant relied for relief in this cause occurred prior to the death of his wife. We may also note here that the transfer to the respondents of a certain sum of money and of some furniture at or about the time the agreement was executed was also in dispute, but as such transfer is merely incidental to the principal matter in controversy we need not discuss those items separately.

Before proceeding further we deem it necessary to observe

that, although the bill alleges that the respondents "importuned" the complainant and his wife to convey the property to them in return for their promise of care and support, there is no specific allegation in the bill that the agreement was induced by any fraud or undue influence by the respondents or by the attorney who, as far as appears of record, acted in behalf of both parties and carried out his mandate in strict accordance with the directions he received from them. Furthermore, the cause was not tried in the superior court on the theory of a trust. In fact counsel for the complainant in at least two instances disclaimed any reliance on fraud when the transaction was consummated, saying: "there is no allegation of fraud in the execution of this contract. We don't allege a fraud. We allege non-conformance"; and again, "there is no fraud in the execution of the agreement alleged. In other words, our allegation is that the respondents did not perform their obligations in accordance with the contract."

Notwithstanding such disclaimer the trial justice examined the evidence with great care to determine for himself whether the agreement was the result of fraud, undue influence, or other unconscionable conduct on the part of the respondents, and he expressly found that the agreement "was entered into fairly and that the complainant and his wife were not led to enter into it." Our examination of the evidence leads us to the same conclusion. In this situation the complainant derives no advantage by his attempt, in his brief and argument before us, to avoid the agreement on the ground of fraud or undue influence. The authorities cited by him based on the existence of such conditions, among which is the case of *Oldham* v. *Oldham*, 58 R. I. 268, are therefore inapplicable.

The basic and only question before us is whether the respondents have faithfully and substantially carried out their obligation to the complainant under the agreement. The relationship existing between the parties and the peculiar nature of the obligation assumed by the respond-

ents require a careful examination of the evidence. To make certain that the interests of the complainant were fully protected we first examined the decision of the trial justice, and then in the light thereof we read the voluminous transcript in order to determine whether he had overlooked or misconceived any material part of the highly conflicting evidence. The result of our examination convinces us that complainant's charges and accusations, which were fairly met by reasonable explanations from the respondents, were basically of a minor character and did not establish that the respondents had failed to perform in a faithful and substantial manner their promise under the agreement in the past or that they did not intend properly to carry out such promise in the future. It would serve no useful purpose to state the various incidents related by the complainant and refuted or explained by the respondents.

In a case such as this a grantor is not entitled to the cancellation of a deed unless he shows by material evidence that the grantee failed in some substantial respect to comply with the obligation of his contract. Furthermore, a grantee cannot be held responsible for failure to comply with the terms of the contract if a grantor, without sufficient cause, makes performance impossible. For cases presenting features similar to those in the instant case, see *Moore* v. *Bugg's Ex'r*, 274 Ky. 135, and *Mruk* v. *Mruk*, 379 Ill. 394. After consideration of all the evidence in the record before us we are unable to say that the trial justice was clearly wrong in dismissing the bill.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Albert Lanthier,* for complainant.

*Guillaume Myette,* for respondents.